[Crim. No. 3858. In Bank.—May 28, 1935.]

THE PEOPLE, Respondent, v. LEE MOORE, Appellant.

Lloyd S. Nix for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

THE COURT.—The defendant was charged with the commission of an assault with a deadly weapon with intent to commit the murder of one James (Socks) McDonough. The appeal is from the judgment of conviction, before the court sitting without a jury, and from an order denying a motion for a new trial. The points made on the appeal resolve themselves into but one, viz., the sufficiency of the evidence to support the judgment.

During the hour from 6 to 7 A. M. on April 14, 1934, six shots from a revolver penetrated the body of McDonough as he was standing at or near a bar in an amusement building in Los Angeles known as the Ice Palace, and wherein a "Walkathon" contest was being conducted. Just prior to the shooting a commotion occurred in front of the bar in which numerous persons took part and during which a bartender fled from behind the bar when pistol shots were fired. After the shooting the victim, McDonough, was found lying on the floor near an overturned and blood spotted table and chair at the southeast corner of the bar. Upon arriving at the scene police officers found eight exploded shell casings within an area of eight or ten feet from the south end of the bar. Four bullets were found near the scene of the shooting. The defendant was in the Walkathon building between 12:30 and 1:30 A. M. on the morning of the shooting. At about 1:30 he left the building with a companion and no one saw him in the building after that hour. He was arrested about 10 o'clock A. M. of the same day while he was asleep in his automobile which was parked at the curb about two or three miles from the Walkathon building. The arresting officers found a .32 caliber pistol in his right hand overcoat pocket. He admitted that he owned the revolver and claimed that he had bought it about 7:30 o'clock that morning at the resort called the Wonder Bar from one Jerry Hoffman.

Although prior to and at the time of the shooting there were a great number of people in the building and in the room that housed the bar, no one testified that he saw the shooting. The witness Levy testified that just after the shooting he saw a "tall guy" run out of a nearby exit. This description would fit Hoffman, but not the defendant. No one testified that he saw the defendant in the building or about the premises later than 1:30 o'clock on the morning in question. The victim testified he had been shot from the front but that he did not see and did not know the person who shot him; that he did not know the defendant and had never seen him until he appeared in court. The defendant testified that he did not know McDonough, had had no business or social dealings with him, and had no quarrel to settle with him. The owner and the manager of the Walkathon each testified that he saw the defendant leave the building between 12:30 and 1:30 A. M. The manager stated that he heard the shots about 6 o'clock. A bartender testified that he saw the defendant about 1 o'clock but did not see him at the time of the shooting. The bartender who fled testified that he saw the defendant after midnight but did not see him at the time of the shooting. Other witnesses testified that they saw the defendant at the Wonder Bar at the time the shooting was alleged to have taken place. None of the bullets discharged at the shooting was found in the body of the victim. The foregoing appears without conflict in the record. No other evidence appears which could be said to connect the defendant with the commission of the offense, unless the following may be said to have that effect: The hospital surgeon testified that the holes in the victim's body were, in his opinion, made by either a .32 or a .38 caliber bullet. The ballistic expert of the city's police department testified that in his opinion the metal slugs found in the building near the scene of the shooting had been fired from the gun which the defendant had in his possession when he was arrested.

The trial judge was undoubtedly suspicious of the gun purchase testimony, also of the evidence in support of an alibi. He was also suspicious of the testimony with reference to what occurred at the time of the shooting. He expressed the view that the transaction had all the earmarks of a "gang feud" between persons "who live outside the

law'', and, in an endeavor to frustrate the law, ''do not talk''. This suspicion was directed to the testimony (with the exception of the expert testimony), on the part of both the prosecution and the defense witnesses. But the successful accomplishment of the purpose to cover up the real transaction cannot, of course, be deemed of itself evidence sufficient for conviction. As to the purchase of the gun the evidence further shows, without conflict, that the defendant was in possession of a permit to carry a gun; that the gun described in the permit had been stolen from him a few days before the shooting and that he had reported the theft to the police department; that he bought the gun from the ''tall guy'' Hoffman for $10 on a representation by the latter that he was in need of money. The defendant was corroborated by three witnesses as to his presence at the Wonder Bar from about 4:30 to 9 o'clock on the morning of the shooting. There was no evidence to rebut this showing on behalf of the defendant. There was therefore no evidence of the presence of the defendant in the Walkathon building at the time of the shooting and no substantial conflict in the evidence to the effect that he was elsewhere at the time. The ballistic expert testimony in this case is not, without more, sufficient to establish proof of guilt beyond a reasonable doubt, and there is nothing more on which to base a conviction. The reluctance of the trial judge to believe the uncontradicted evidence cannot supply the deficiency. Although we may share the same suspicions entertained by him we cannot escape the conclusion that on the record presented the evidence is insufficient to support the judgment.

The judgment and order are reversed.